

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Patricia McLane* | *Suite 400* | *DIRECT: 410-209-4942* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Patricia.McLane@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0717* |

October 3, 2025

The Honorable Julie R. Rubin
United States District Court Judge
District of Maryland
Edward A. Garmatz United States District Courthouse
101 W. Lombard Street
Baltimore, MD 21201

>        Re:        Sentencing in *United States v. Garrick Powell*
>                   Crim. No. JRR-23-146

Dear Judge Rubin:

        The Defendant, Garrick Powell, is scheduled for a sentencing hearing on October 15, 2029, 2025, at 10:00 a.m. The Government offers this sentencing letter in support of a **96-month** sentence. The Government requests the 96-month sentence run **consecutive** to the sentence imposed in Baltimore City[1] and the anticipated sentence in Anne Arundel County[2].

        The Government will not fill the space with lengthy explanations of sentencing case law that is non-controversial. The Government agrees that the Court has discretion in sentencing a defendant and should consider the guidelines as well as the factors outlined in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient but not greater than necessary.

        What is controversial is the appropriate sentence. Mr. Powell's request of a mere 37 months' incarceration for his *fifth* conviction, and his *second* handgun conviction, is offensive to the very case law in his sentencing memo. Mr. Powell is simply not taking this conviction seriously. Mr. Powell is not taking this sentencing hearing seriously. And he is certainly not taking this Court seriously. And so, a lengthy sentence must be imposed to satisfy all the sentencing factors, most important of which for Mr. Powell, to protect the community from further crimes of Mr. Powell.. A community Mr. Powell put in grave danger on April 19, 2023, by possessing a machine gun and 63 rounds of ammunition.

---

[1] On September 30, 2025, the Circuit Court for Baltimore City sentenced Powell to five years, eight months and one day for the violation of probation in case number 114273029. *See* Presentence Report at ¶ 34. The Court closed the violation of probation in case number 113336018 and did not impose additional time. *Id.* at ¶ 33.
[2] The Defendant is scheduled to be sentenced in case number C-02-CR-21-000394 (firearm/drug trafficking crime) on October 29, 2025. *Id.* at ¶ 35.

# I. UNITED STATES SENTENCING GUIDELINES

The Government disagrees with the sentencing guidelines calculation in the Presentence Investigation Report ("PSR"). Specifically, an additional four levels pursuant to § 2K2.1(b)(6)(B) should be applied for two reasons. First, the parties agreed to the application in the Plea Agreement; and second, the application is supported by facts in the Plea Agreement regardless of whether the weight of the drugs is determined. The Court needs only to find that the firearm had the potential of facilitating another felony offense to apply this provision. The Application note at 14(C) defines "another felony offense" as any "federal, state or local offense …punishable by imprisonment for a term exceeding one year …". The felony here is possession of cocaine with the intent to distribute, which is a felony under Maryland state law. *See* Md. Ann. Code § 5-602 and 5-607(a) (penalty carries up to twenty years' incarceration).[3] The crux of "intent to distribute" is not weight (although that is a factor to consider) but the intent of the possessor. Here, Mr. Powell agrees to his intent and therefore the parties agree that § 2K2.1(b)(6)(B) applies.[4]

The Government agrees that the base offense level is 22 pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2K2.1(a)(3) because the Defendant possessed a firearm as described in 26 U.S.C. § 5845(a) after being convicted of a predicate felony. ECF No. 67 at ¶ 18. The Government further agrees that a three-level decrease shall apply for acceptance of responsibility and timely notice of acceptance pursuant to U.S.S.G. §3E1.1(a) and (b) (despite a fulsome motions hearing and arguably, a less than fulsome acceptance of responsibility given the myriad list of excuses proffered in his sentencing memo). *Id.* at ¶¶ 25, 26. The final total offense level is therefore 23, not 19 as suggested by the PSR. *Id.* at ¶ 27.

The Government agrees that the Defendant's criminal history category is V. *Id.* ¶ 38. With a total offense level of 23 and a criminal history category of V, the Government believes the guidelines are 84-104 months' incarceration. The Government asks the Court to impose a sentence of 96 months' incarceration as sufficient but not greater than necessary to achieve the goals of sentencing.

Mr. Powell disagrees at length with his criminal history category. True to form, he focuses on other people's conduct rather than his own. This Court should not consider the Defendant's claim that his 2012 conviction is invalid simply because of the presence of Det. Hersel during the arrest. The Defendant practically writes an amicus brief suitable for a sentencing of Det. Hersel rather than a memorandum in support of his own sentence. Mr. Powell's allegation is a bald claim of general malfeasance without evidence specific to his arrest and subsequent conviction. Of note, Mr. Powell fails to mention that Det. Hersel was not the sole officer; in fact, it does not appear from the statement of probable cause in the PSR that Det. Hersel was the arresting officer. *Id.* at ¶ 31. The fact that Det. Hersel was involved in an arrest does not automatically deem the Defendant innocent. Two other Baltimore City officers participated in the arrest. Further, Mr. Powell

---

[3] 21 U.S.C. § 841 also applies.

[4] The Government reminded the Defendant that the Plea Agreement allows the parties to advocate for the base offense level (22 or 20) and therefore the question for the Court is whether the total offense level is 23 or 21, not 19 as suggested in the Defendant's sentencing memo.

admitted under oath to guilt. *Id.* at ¶ 31. Is the Court to ignore Mr. Powell's affirmation under oath? Is Mr. Powell stating he perjured himself by accepting responsibility?

As the Defendant points out, the state is the correct venue to address any issue with this conviction. The fact that they have not done so despite counsel's repeated requests may give the Court some assurance that Mr. Powell is indeed guilty, and the three points should apply. At the very least a bald allegation is simply not enough for the Court to discount Mr. Powell's criminal history; nor is it a mitigating factor. No matter how egregious the conduct of another might be in another unrelated matter, Mr. Powell is the one being sentenced in this matter and it is *his* conduct the Court must consider.

## II. THE RELEVANT SECTION 3553(a) FACTORS

The Court should heavily weigh the Defendant's possession of a machine gun and 63 rounds of ammunition. These facts, which comprise *less than a page* of the Defendant's nine-page sentencing memo, are excused by the Defendant's claim of "fear". The Defendant states he had a machine gun and 63 rounds of ammunition to protect himself. This claim is absurd. The Defendant possessed a machine gun because that is the lifestyle he lives. He has no respect for anyone's life including his own.

### A. Nature and Circumstances of the Offense, the Seriousness of the Offense, and the Need to Protect the Public from Further Crimes of the Defendant

The nature and circumstances of the offense are serious especially in Baltimore where firearm use is frequent and deadly. It is certainly more so when the firearm is a machine gun capable of firing more than one shot with a single pull of the trigger. Machine guns are notoriously difficult to control even for the most seasoned firearm user, and the risk of innocent lives being lost is incredibly high. Mr. Powell's killing machine was prepped to take 63 lives. Mr. Powell claims, ironically, that he needed to arm himself because his life was in danger, and he has no trust in law enforcement.[5] However, it cannot be Mr. Powell has 63 enemies determined to take his life. It certainly cannot be all 63 enemies would line up to be neatly mowed down with Mr. Powell's machine gun, after which Mr. Powell would lay down his arms and live a safe and prosperous life. This vanity firearm with an excessive amount of ammunition is hardly for personal protection.

And this was not the only crime the Defendant committed that day. The parties agree the Defendant possessed the cocaine for distribution rather than personal use. The Defendant did not

---

[5] It is ironic that Mr. Powell, himself a victim of gun violence with apparently lingering health issues from the shooting, has no concern leveling this same fate (if not worse) on 63 other people. Further, Mr. Powell's claim that he does not trust law enforcement to keep him safe is a classic and convenient trope defendants trot out at every sentencing hearing involving illegal gun possession. Mr. Powell offers no evidence supporting his claim that Baltimore City police officers affirmatively do not nor would not protect Mr. Powell or anyone else's life. Mr. Powell tries to paint an entire agency with the taint of Det. Hersel, and it is not only offensive to upstanding officers but yet another example of Mr. Powell laying the blame on anyone but himself.

admit to, nor did the PSR note any cocaine addiction. *Id.* at ¶¶ 90-96. These two crimes, possession of a firearm and cocaine, is proof of the Defendant's dangerousness to the community and himself.

A sentence at the top of the guidelines, 96 months' incarceration, will achieve this goal by keeping the Defendant away from the public for nine years.

### B. History and Characteristics of the Offender

The Defendant's disdain for the judicial system can be traced back to at least 2014 when he intimidated a witness to recant his prior identification of Mr. Powell as a murderer. This act alone saved Mr. Powell from being convicted for the murder of a man on Annapolis Road. That man was shot and killed; Mr. Powell saw to it that his family never received justice. While on probation for this conviction, Mr. Powell committed the instant crimes. He was also pending sentencing in a firearms trafficking case in Anne Arundel County. Being under judicial supervision did nothing and will do nothing to deter the Defendant from committing crimes and endangering the public. He simply continued and will continue to live his life the way he wanted to without regard to rules and regulations.

To be sure, the Defendant, like most defendants, had a difficult life with minimal familial support, education gaps, and emotional challenges. The Defendant's life is marked by tragic and heart-wrenching moments that clearly have impacted him to the present day. However, and most unfortunately, such a life is far too common in Baltimore City. Critically, not everyone who has lived a life like Defendant turns to a life of crime. But Defendant did and continues to do so.

Defendant's need for services leaps of the pages of his submission and the PSR. A lengthy period of incarceration and supervised release will provide time for the Defendant to focus on a career and gain important skills to prosper upon release. The Government hopes that Mr. Powell takes responsibility for his life, his prior actions, and his future choices.

### C. The Need to Afford Adequate Deterrence.

Candidly, the Government has no confidence that 96 months will be enough to deter Mr. Powell from further criminal acts. However, imposing a 96-month sentence may promotes general deterrence while not being greater than necessary. This sentence tells others that if you endanger the lives of others and your own by possessing a loaded machine gun outfitted with an extended magazine on the streets of Baltimore City you will spend a lengthy period of time in Federal prison. Under all these circumstances, a 96-month sentence is the appropriate sentence in this case to reflect the Defendant's history and characteristics and to afford adequate deterrence.

### III. CONCLUSION

For these reasons, the Government respectfully submits that a sentence of 96-months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing under Section 3553(a).

Very truly yours,

Kelly O. Hayes
United States Attorney

_____/s/_____
Patricia McLane
Stanton M. B. Lawyer
Assistant United States Attorneys